All right, the next case we're going to hear is Sotnikau v. Lynch and Mr. Zaro, whenever you're ready, we'll hear from him. May it please the court, Jason Zaro on behalf of Petitioner Ihar Sotnikau, both the government and Mr. Sotnikau agree that this case should be remanded to the BIA. We believe this case should be remanded with instructions to terminate the proceedings. The government, however, wants this case remanded for a redo. You don't want us to reverse it? Yes, that would be an appropriate remand. Why remand? Because the case, I believe, has to go back to BIA, so it can enter a judgment in Mr. Sotnikau's favor. But a reversal by this court, I believe, would have the same effect. Instructions to terminate the proceedings, but be at the BIA and then at the IJ level. But in either case, the remand is. The BIA seems to concede that there was an error. Yes. If it's an error of law, it's something we correct. We don't send that back to have the BIA get a second shot at it, do we? Correct. That is the position we're taking in this case. The BIA made an error of law. So you don't want us to remand? We would like you to remand with instructions to terminate the proceedings, but if you feel that. You're hard to pin down. You want us to rule that the Virginia conviction, or a Virginia conviction, or involuntary manslaughter is not categorically a crime involving moral turpitude. Correct. That's what you want us to rule? Correct. If we rule that way, what would the bottom line say? Reversed? Reversed. Petition granted. Yes. Petition granted. Reversed. For something. Correct. We win. Yes. Is that what you want? That is the ultimate point, yes. So you don't want a remand? If this court feels comfortable reversing the BIA, yes. Yes. I'm just trying to pin you down on what you want. Don't you think we have the authority to reverse the BIA? Yes, I do. And in that case, yes, your honors. But they need to apply proper law, right? The BIA did not apply the proper law. We don't defer to them on any particular law. Yes. This court undoubtedly has, I believe, the power to reverse the BIA. And in that case, then, the proper remedy would be a revoke. So you want a reversal now? Correct. But the government, in any event, wants this case remanded to the BIA for a redo. So it can advance, for the first time in the five years that this case has been pending, the argument that involuntary manslaughter committed negligently is a crime involving moral turpitude. And that type of remand is unwarranted. Do you take their brief to be a concession of your legal argument? My understanding of their brief is that they're making two arguments. The first argument is that the BIA's reasoning is so opaque that there's nothing for this court to review. And I think under this court's precedence, Casalena in particular, that argument is meritless. The second argument I believe they're making is that the case should be remanded to the BIA so that the government can argue for the first time that negligence is a sufficiently culpable mental state for moral turpitude to adhere. Under general law? Interpreting the statutory phrase, crime involving moral turpitude, the government now agrees that Virginia law, the involuntary manslaughter statute, covers both negligence and recklessness. So what the government wants to do is But we apply the categorical approach. Correct. That's what the law says we do. Doesn't the government agree that, I mean, I didn't think there was any debate between the parties on what Virginia law covers. And I took the government to concede that under Virginia law, involuntary manslaughter was overbroad in terms of how the board defined it in a matter of, I think it's Franklin? Yes. That's the right case. So that under board law, it wouldn't fit. But you and the government could debate what the board law is. But I don't think there's any, unless you tell me differently, I don't think there's any debate between the parties about what the Virginia law is. Correct. And there is no dispute about what existing BIA case law says. And that's a matter of Franklin and a matter of Paris Contreras, which together say involuntary manslaughter committed recklessly. What do you understand the government want the board to do? They want the board to essentially change the test for what constitutes a crime involving moral turpitude. Do you believe the board got it wrong legally? I believe the board got it wrong legally as it applied the current definition to Mr. Sotinacow and believe if the board were to change it. The government seems to see that the board recognized that Virginia includes negligence in their brief. They seem to say that. Correct. What's there more to do? Nothing, Your Honor. And that's why we believe this case essentially should be over. Mr. Sotinacow did not commit a crime involving moral turpitude. I think the point the government is trying to make is they want to change the test for what constitutes a crime involving moral turpitude. They agree that the BIA applied the proper framework. You agree they can change the test. You just don't think they can do it in your client's case because they didn't raise an alternative argument that they may want to advance. Below, they have not raised the alternative argument before. Is that right? Exactly. The scope of this case before the court right now is very narrow. It's just that issue. Whether or not the case should be sent back so that the BIA can change the test in this case. So they could change the rule tomorrow. And even if that rule would have encompassed your client, as far as you're concerned, it's too late. Absolutely. And for a number of reasons. One, because the government waived its argument. Two, I actually believe that the new position that the government wants to advance is foreclosed as a matter of law. And under Hussein versus Gonzalez and a number of this court's precedent, the court has discretion to reject the government's argument on the merits. And the third reason is it would be unconstitutionally retroactive because it would attach new legal consequences applying the decision to Mr. Sotnikow to conduct that occurred before the rule was articulated. So really the only issue here, from your perspective, as I understand it, is whether or not the government can convince us they get a remand. Correct. And for those three principal reasons, we believe that type of remand for the government to make a new argument for the BIA is entirely unwarranted in this case. All right, why don't we hear from your counterpart. Oh, our opposing counselor? Yes. OK. Thank you. Mr. McManus. Unless, do you have anything further? No, no, Your Honor. You can stand. You have a lot of time left. There's no requirement that you use it all. No, absolutely not. Unless the court has any other questions, I'd be happy to stand on the briefs. Good enough. Thank you. I didn't want to cut you off at all. No, not at all. Thank you. Mr. McManus. Everybody's talking about what the government's position is. You're the one that gets to articulate. Thank you, Your Honor. I appreciate that. Good morning, and may it please the court. Keith McManus on behalf of the responding Attorney General Loretta Lynch. Let me be clear, Your Honor, about what the government's position is in this case. If the BIA is going to mean what it says, it has to first say what it means. And these are fundamental principles of administrative law. Neither the parties nor the court can speculate about what the board is trying to say and what it meant to say without any reasoned explanation from the board. And I want to be clear that the explanation they're holding is basically that the Virginia statute should be construed like the Missouri statute. And you seem to agree in your brief that that's erroneous, that the Virginia statute is different because it includes negligence. And if that's so, why don't we just reverse and let the board take its course in the future as to how they want to handle it? In this case, it seems to me, it's just a straightforward and not even that complex a legal question. Well, I don't think that's true, Your Honor, and here's why. The government is not conceiving any legal error with regard to the board's ultimate conclusion. We are simply saying that the paucity of explanation, the lack of any reason to do so. What explanation can they give? You said they seem to recognize that Virginia includes negligence. Correct. And that's error. You agree with that, too, don't you? No, Your Honor. It's not error because the premise that this case and the board's analysis here was controlled unequivocally by the decision in matter of Franklin or the other decision the petitioner cited. Yeah, but you were wrong in that. You agree with that, don't you? Because the Franklin statute does not parallel the Virginia statute. That's right, Your Honor. They don't match up as far as the men's rights. Yeah, but is your position that Franklin is not the controlling board at all? It's not the test, as Petitioner's Counsel points out, Your Honor. I mean, it looked like to me they were pretty definitive on what you had to do in order to show involuntary manslaughter on a state-by-state basis. But that's not the question, Your Honor. The question is whether an individual state offense, whether it be involuntary manslaughter or anything else, meets the generic federal definition. And the board's generic federal definition, as recently articulated in the third iteration of matter of Silva-Trevino, is simply reprehensible conduct plus a culpable mental state. Matter of Franklin does not stand for the proposition that, at an irreducible minimum, recklessness, as defined by a conscious disregard of a known risk, is the standard for that culpable mental state. That is the flaw in Petitioner's argument. And that's why the result of the board has changed its standard since matter of Franklin? I'm saying it's not a standard in the way that Petitioner wants it to be. It is not the federal generic definition that this court would use under the modified categorical approach. It is a singular board. Modified categorical approach? I beg your pardon, Your Honor. The categorical approach. You agree the categorical approach is flawed? Absolutely. I'm sorry. That was a complete mistake. Do you agree that an involuntary manslaughter crime that's committed negligently doesn't involve moral turpitude? No, I do not agree with that, Your Honor. And that is precisely the point, because we don't know whether the board would say that. Petitioner also suggests that. The board said conscious disregard. They used a subjective standard. Right. Conscious disregard. Virginia has an objective standard, which would include conduct which is not a conscious disregard. And so it's too broad under the categorical approach. Only if that's the objective. That's the whole thing. They applied Franklin to this statute, and it's not a match. And all we need to say, it's not a match, and that ends the case, doesn't it? But that's only true, Your Honor, if Franklin announces once and for all the generic federal definition of a crime involving moral turpitude. It doesn't matter, because when you have, you have to agree that negligence is not a crime of moral turpitude, isn't it? If it includes it. I'm sorry, if what includes? If the Virginia statute includes negligent conduct, there is no moral aspect. It's an accident. There was a negligence, and it may be gross negligence, but it could be accidental. And the board had good reason to incorporate the notion that there had to be a conscious disregard. Because the consciousness creates the moral issue. That was certainly the basis for the- Franklin. Well, and actually, Franklin is based on prior board precedence. Yeah, fair enough, fair enough. But that's irrelevant. What's relevant here is we have a statute that's different, and the board seemed to ignore the difference. I think that's part of the- And all we need to say is that they made an error on that. And you're brief. I must say, I take it as a concession. You really want the board to come back with, how did they get to this result? That's right, Your Honor. But we don't need to, because they got to the result that's wrong. Again, Your Honor, we- And you seem to concede it in your brief. No, no. We agree that they got to the result in the wrong way. They did not provide a reasoned explanation. And the reason is there is nothing, there is no preclusive effect on matter of Franklin or matter of Perez-Contreras. And we're not saying that this is the government's position, and we're not saying that the board would potentially be right, or that the court should necessarily defer. But if it wanted to, on remand, the board could certainly reach this result and explain much more thoroughly why. How could it reach this result? It could explain, Your Honor, for example. But that's- You just want them now to do a new analysis, a different, adopt a different law, or different principles. But again, Your Honor, when the board speaks, those interpretations, especially when it's considering ambiguous statutory phrases, those are not set in stone. This is the fundamental principle of Chevron and Brandeis. Except we're talking about law, and we're talking about a moral turpitude. And we have the right on this type of review to look at the statute and see whether the board got it right or wrong. Right. And if the board can see the board got it wrong- No, again, Your Honor, there is no concession here. We are saying that, yes, the court would owe deference to the board if it had given a reasoned explanation for saying that a lesser mens rea, like criminal negligence, as defined by the Commonwealth, is sufficiently culpable for the moral turpitude analysis. Well, here's what the board said. It said, we have found that moral turpitude is inherent in an involuntary manslaughter offense that requires, by its elements, conscious disregard for a substantial and unjustifiable risk. And we conclude that the offense of involuntary manslaughter in Virginia contains all of the requisite elements outlined in the matter of Franklin, which included conscious disregard. Right. I mean, that seems awfully clear to me that they have set out the standard. And the Virginia statute, or the Virginia offense of involuntary manslaughter, is broader than that. I don't understand what it is you think the board's going to do unless they come up with a new test and apply it after the fact to this alien. Well, again, I think, Your Honor, the whole premise that Franklin is the absolute standard for what constitutes a crime of violence. Why did you put in the absolute? It's the standard the board adopted. That's what they said. That is part of the error, Your Honor, comparing these two different state statutes. What all matter of Franklin holds is that that very Missouri statute that did involve a conscious disregard of a known risk, based on prior board precedent, was, in fact, a crime involving moral turpitude. So why do you get a do-over? Because the board misinterpreted or misunderstood what the appropriate analysis was. The appropriate analysis is, is this particular state offense, criminal negligence, involuntary manslaughter defined by criminal negligence in the common law, is that, in and of itself, morally turpitude? And the question is, does it contain reprehensible conduct and a culpable mental state? The board could very well reach the conclusion that criminal negligence, defined in the way that the state courts have in Virginia, that it's somehow equally culpable, no less culpable, than the conscious disregard announced in Franklin. But Franklin is not the end of the matter. I think that is the inherent flaw. No, what the board did is use Franklin to identify some elements that were necessary. And that's part of the error. A central element that seems to be not an error is the conscious disregard. It seems to me conscious disregard is necessary for a moral decision. And if you don't have the conscious disregard, when you have an objective standard that includes negligence, you are now not taking into account moral turpitude, which the statute requires. But right there, Your Honor, that analysis is getting ahead of the board on whether the court can and should defer to the board's different interpretation. They don't have a different interpretation. They have the same interpretation. But that's exactly why we're arguing remand, Your Honor. We're not saying, we're not taking a position that the board is. Judge Agee, just the sentence what the board adopted, what seems to be an appropriate standard under moral turpitude, a conscious disregard. Sure, Your Honor. Do you have any other proposal for a moral turpitude in involuntary manslaughter? Any other element than conscious disregard? Sure, Your Honor. Let me point the court to a case. And again, let me be clear. This is not the government. A law case or a board case? I beg your pardon? Are you pointing to a law case or a board case? I'm going to point to a Court of Appeals decision that sort of lays out this analysis. But let me be clear again. This is not the government's position. Because we don't think the board provided enough analysis for the court to even decide whether this interpretation would be reasonable. There's nothing to defer to because. There's no analysis needed if they say our standard needs to have this categorical approach, means of conscious disregard. It's a subjective standard, which implicates the moral will. And to me, I don't see anything wrong with that. Then the board came and said, Virginia's statute matches that. And that was error. Or at least that's the argument. The question is, you say, well, it may or may not have been error. We want to give them more chance to explain. We can do that same analysis. That's what we do all the time. But the difference is, Your Honor, the court has recognized and the Eighth Circuit, when it reviewed Franklin, recognizes that it's the deference owed to the board that's important here. Moral turpitude is a- They don't have trouble giving them deference to their definition. Their definition is a conscious disregard. I think that's the false premise, Your Honor, that this whole entire thing is based on. It falls apart if the board doesn't interpret Franklin in that way. And I realize the sentence, Your Honor, and this is the point we make in our brief, that one lone sentence that constitutes the board's conclusion in this case. I think reasonable minds can differ about what that means. The court may disagree. But that is all we're asking for, is for the board to do its own work. It should be demanding. Well, is that what it said? This doesn't seem like to me you've got an awful lot of wiggle room there. Well, we disagree, Your Honor. And again, we don't take lightly the notion that the court would not be able to decide an issue brought before it. That's not the point. We realize you have the full authority to do that, if you so choose. We have full and utter authority on this issue. Yes, Your Honor. But even this court has said that the fact that you have de novo review does not detract from the fact that you owe deference to the board. And nor should de novo review make the board's adjudication of the fact that the board made the misstep of looking at the Virginia statute and not recognizing that it has an objective component. Whereas they require, the board requires, and there's no dispute about this, they cited other cases, they require a subjective component which implicates will. It's a state of mind. And the state of mind in the involuntary manslaughter that they find categorically satisfying is what had this aspect to it. But Your Honor, I think you're conflating the issues, right? Because as Judge Agee pointed out, there is no confusion about the state of Virginia law. The IJ and the board very clearly articulate the standards, including the objective knowledge requirement. And so it's- And they got it wrong, right? I'm sorry, Your Honor. How did they get it wrong? They interpreted this- They interpreted the Virginia statute to match the Missouri statute. That exactly, Your Honor, is the different question, though. They didn't misinterpret state law. They tried to basically fit a square peg into a round hole. And that's legal error, right? I don't concede that it's legal error to the point where it wouldn't require further clarification from the board. Let me go back to- Well, that's the only way you can justify remand, is you think there's a clarification needed. And that- Well, that's right, Your Honor. And I don't think that deviates from any fundamental administrative law principle. I mean, every time the board gets something wrong, should we let them go back and try to get it right? No, Your Honor. But if they don't provide a reasoned analysis that could require the board's deference, then where important policy considerations are at play, then the court should consider a remand. I mean, again, this is not uncommon. That's the other thing I want to remind the court. This is not unprecedented. We often face voluntary remand requests that are opposed, and then we're forced to brief the issue presented to the court. But that's never- But at the bottom, we're still working on a statute issued by Congress, enacted by Congress, which says that the crime has to be one involving moral turpitude. Right, Your Honor. But that is a famously ambiguous phrase. Of course it is. And the board has interpreted that, and has given its take on it. And we would not be second-guessing that. We'd give deference to that, unless it were clearly wrong. And they've laid that out. And then the third step was, in this particular case, the gentleman or the man was convicted of involuntary manslaughter under Virginia law. And the question is, is that a crime of violence as a matter of law? Moral turpitude. A crime of violence. Moral turpitude, Your Honor. And the board's a moral turpitude, excuse me. We have a crime of violence. That's right, right, right. Well, actually, I want to bring that back to this point I was trying to make. I'm going to acknowledge, Your Honor, the case I'm about to read you. Different context. Actually, crime of violence, as it were. But what I'm trying to show is that where the board could go, and why the analysis may very well warrant deference and be reasonable, and why we don't think matter of, if matter of Franklin were the end of the story, it's not just that the board erred. It completely misconstrued its own precedent. And certainly, the board should be the arbiter of what its own cases mean. It should be able to provide that. How did it misconstrue its own precedent? Well, I'm saying, if you're saying, Judge DeGioia, that that is the. Oh, I'm asking you what you meant, when you said the board misconstrued its own precedent. How do you mean? What I'm saying is that matter of Franklin, again, is not the end all be all of what a crime involving moral turpitude. And do you, and you take their opinion to say that that case is the end all? Well, again, Your Honor, my position is it's not clear. We can't discern what the board meant by that. And again, let me finally get to this point. In a case called Park, the Ninth Circuit was asked in a criminal, I'm sorry, crime of violence case, to consider whether. We have a few of those, too, Your Honor. What's that? The crime of violence. Oh, no, I know, Your Honor, yeah. And the analogy may not be out, but this analysis is. Involuntary manslaughter under California law, much like involuntary manslaughter in Virginia, can be committed only with criminal negligence. And the court recites the statutory provision defining it much the same way that the commonwealth does. The court went on to hold, quote, this definition describes a men's right no less culpable than recklessness, defined in the same way that the Missouri state courts did in matter of Franklin. So there is a basis, Your Honor, for the agency to determine, if it wanted to, that criminal negligence, as it's defined in Virginia, is somehow morally culpable or morally equivalent to the type of conscious disregard at issue in Franklin. And again, Franklin doesn't have that type of preclusive effect. When the board speaks, it does not set its interpretation in stone. It is always free to change that interpretation. And whether that would be in the next case, why does it get to do it here? But that's exactly the point, Your Honor. You could do it in this case if the board had given us a good reason, had given us an analysis. Well, give me a hypothetical analysis that would make Virginia's involuntary manslaughter involve moral turpitude when they have an objective standard and have articulated it as an objective standard. Under the categorical premise. Yes, yes. Well, again, Your Honor, you would start with the premise that the board is entitled to definition. No, no, forget the board.  would argue the statute. Right. Forget the board. We're now looking at the statute. It says a crime involving moral turpitude. Right. And we've construed moral turpitude to be based on a recognized moral standard. And the turpitude is the debasement of that standard. Right. And so you have to argue now, under Virginia law, that that crime categorically of necessity involves moral turpitude. Well, the way you do that, Your Honor, is to combine the elements. Right? The board has said, and I have to rely on the board because that. Why? You're doing a statutory analysis. And you're making it up now as if you were the board. I just want to know. Oh, that's fine, Your Honor. Right. OK. Yeah, no, that's fine. And what I'm saying is, in the past, the board has said that elements of a state offense can sort of coalesce and combine to make conduct so far removed from recognized social norms that it involves turpitude in its conduct. Now here, again, you have to keep in mind, it's not just the fact that you have an objective knowledge standard in Virginia. You have conduct that has been described as willful, wanton, and so gross to be such a deviation from the reasonable person's standard This is under Virginia law? Correct. That constitutes a capital offense. That doesn't say it in Virginia law. Virginia law says involuntary manslaughter can include gross negligence, can't it? Yes, Your Honor. But conduct is further described by the state courts. This is in both briefs. Cases like Bell, no. You're talking about the conduct in this case. No, Your Honor. Now we're talking about the state statute. Correct. The state statute in abstract. All right. It is generally modified categorically. No, no, no, no, no. I thought you were changing the approach. Nope. Nope. Your Honor, we're talking, again, hypothetically, of course, this is not the government's position or the board's position. We're hypothetically talking about what the Virginia statute means. So going further, Your Honor, the states recognize that it's that type of conduct that is so, it represents such a callous disregard for human life and the consequences of one's actions that it's criminally culpable. So the question, then, is how do you infer moral turpitude in the absence of knowledge? And this is your entire point, Your Honor, that because conscious disregard might reasonably be a sufficient standard. In the absence of that constructed, I'm sorry, of subjective knowledge, how do you infer moral turpitude? Well, the question is the board could provide the answer. I simply would suggest knowing facts that would cause a reasonable man to know the danger is equivalent to actually knowing the danger. That's it. That's the analysis. If the board wanted to reach that conclusion, it could. Whether the court would defer to it as reasonable is a question for another day. And it is a question that can be answered in this case, Your Honor, if you require the board to provide its reasoning, to explain its rationale in a way that makes sense and that the parties in the court can understand to permit adequate review. Thank you. Thank you, Your Honor. All right, Mr. Zauer, you have a few minutes. I won't wait a week, and I'll say that. The government's argument before this court is that the BIA erred in construing Matter of Franklin to be controlling. But the reason that the BIA did that was because when this case was before the IJ, the government argued this is a statute that involves recklessness, and therefore is a crime involving moral turpitude under Matter of Franklin. When Mr. Sotnikau raised the exact same argument to the BIA, the government said the IJ's decision is correct in all material respects. The government has waived, both before the IJ and the BIA, any argument that Matter of Franklin is not controlling. Thank you. Thank you. We'll come down to recount and take a short recess. This hour's court will take a brief recess.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee